IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CATHY COTTRILL-CRAIG,
   Plaintiff,

v.                 Case No. 2:07cv445
                  JUDGE EDMUND A. SARGUS, JR.
                  Magistrate Judge Abel

ROSS COUNTY HEALTH
DISTRICT, et al.,
    Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of the Defendants' Motion for Summary

Judgment. (Doc. # 26.)[1]  For the reasons that follow, Defendants' motion is denied in part and

granted in part.

## I.

Plaintiff Cathy Cottrill-Craig brings this action for disability discrimination, alleging that

Defendants failed to accommodate her disability, in violation of the Americans with Disabilities

Act ("ADA"), § 42 U.S.C. 12101, and Ohio Revised Code § 4112.02.  Defendants are Plaintiff's

former employer, the Ross County Health District ("Health District"), the Board of Ross County

Commissioners, Dr. Timothy Angel, the Ross County Health District Commissioner, and Kathy

Wakefield, Director of Community Health.  Plaintiff's ADA claim is asserted only against the

Health District.  Plaintiff also asserts a claim of intentional infliction of emotional distress.  This

Court has jurisdiction over Plaintiff's claims under 28 U.S.C. §§1331 and 1367.

---

[1] Defendants have moved to strike Plaintiff's Declaration (Doc. #29), and Plaintiff has moved to
strike the Affidavit of Defendant Angel (Doc. # 32.)  Because the Court finds genuine issues of
material fact preventing summary judgment without considering the disputed declaration and
affidavit, the motions are denied as moot.

Defendants move for summary judgment on each of Plaintiff's claims. Plaintiff does not oppose Defendants' motion for summary judgment as to the Defendant Board of Ross County Commissioners. (Pl.'s Mem. at fn1.) Therefore, Defendants' motion is granted and Plaintiff's claims are dismissed as to the Board of Commissioners only.

## II.

Plaintiff began employment with the Health District as a Public Health Nurse I in June, 1997. (Compl. ¶ 9.) She was terminated in July, 1998 for allegedly falsifying overtime and Medicare time records. Her termination was later overturned, in June, 1999, she was reinstated as a Public Health Nurse and assigned to the "Nurse of the Day Program." (Defs.' Mem. at 2.) This position required Plaintiff to spend a substantial part of her shift standing and walking. (Compl. ¶ 9.)

Plaintiff was diagnosed with bilateral osteoarthritis in her knees in 2001. (Pl.'s Mem. at 2.) Her condition causes severe pain, swelling, stiffness, weakness in her knees, difficulties with balance, and substantially limits her ability to walk more than a hundred feet or to stand for more than a few minutes at a time. (*Id.*) Plaintiff often requires the assistance of a wheelchair, golf cart, or cane. (*Id.*) Plaintiff claims that the pain in her knees is sometimes so great that she is unable to rise from a seated position or climb stairs. (*Id.* at 3.) According to Plaintiff, she repeatedly told her supervisor, Helen Ricketts, about the pain in her knees and also provided copies of doctor's notes describing her condition and treatment to the Director of Community Health. (*Id.* at 4.)

Plaintiff continued to work in the Nurse of the Day Program until November, 2003, when she requested a transfer to the position of Health Educator in the Breast and Cervical Cancer Project. (*Id.* at 5-6.) Plaintiff was told to put her transfer request in writing, but was not

instructed to include the reason for her request. (*Id.* at 6.) In February 2004, Plaintiff's doctor approved for her a handicapped parking placard from the Ohio Bureau of Motor Vehicles. (*Id.*) According to Plaintiff, she informed Dr. Angel twice of her need for a handicapped space; Dr. Angel ignored her requests. (*Id.* at 7.)

Plaintiff was diagnosed with acute situational anxiety disorder in April, 2005, after she was disciplined by Angel and Wakefield for her alleged harassment of another employee, an incident that Plaintiff considered an "inside joke." (*Id.*; Compl. at ¶14.) Her doctor placed her on a ten-day leave of absence to recover from her anxiety and depression. (*Id.* at 8.) While Plaintiff was on leave, Angel and Wakefield told Ms. Bunch, Plaintiff's supervisor at the Breast and Cervical Cancer Project, that they were transferring one of the two Health Educators out of the Project to alleviate a nursing shortage. (*Id.*) Angel asked Bunch which nurse she wanted to keep, and Bunch chose Karen Androsac, who had been there longer than Plaintiff and had OB/GYN experience. (Bunch Dep. at 35-36.)

Subsequently, Bunch wrote a memorandum to Wakefield and Angel on April 14, 2005, in which she expressed her concerns about transferring Plaintiff out of the Breast and Cervical Cancer Project and stated that she did not believe that Plaintiff was physically able to stand on her feet for the amount of time required as Nurse of the Day. (Bunch Dep. Ex. 8.) Bunch also stated that Plaintiff's physical limitations were reason she had requested the transfer. (*Id.*)

Bunch told Plaintiff that she was being transferred back to the Nurse of the Day program when she returned to work from leave on April 18, 2005. (Pl.'s Mem. at 10.) Plaintiff's doctor did not allow her to return to Nurse of the Day because standing and walking on concrete would damage her knees, and placed Plaintiff back on FMLA leave. (*Id.* at 10, Atchison Dep. Ex. 11.) Both Angel and Wakefield testified that once they received FMLA Certification from Plaintiff's

3

physician, they understood that Plaintiff suffered from osteoarthritis in the knees and had related physical limitations. (Wakefield Dep. at 68, 72; Angel Dep. at 39, 43.)

While Plaintiff was on leave, Angel sent her to see Dr. Otten, another physician, to obtain a second opinion regarding her ability to perform the essential functions of her job with or without a reasonable accommodation. (Atchison Dep. Ex. 16; Ricketts Dep. Ex. 2). Dr. Otten found that although Plaintiff was unable to perform the essential functions described, she was capable of performing seated work. (*Id.*)

After Plaintiff exhausted all her paid leave she requested to be placed on unpaid leave, which Defendants denied. (Angel Dep. at 51.) Plaintiff then requested a disability separation. (Atchison Dep. Ex. 14.) Angel wrote to Plaintiff on July 28, 2005, informing her that her request for disability separation was granted and that she would face disciplinary charges should she ever attempt to return to work. (Angel Dep. Ex. 30.)

### III.

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at

trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the

hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present

affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.*

(quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere

scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient

for the nonmoving party to merely "'show that there is some metaphysical doubt as to the

material facts.'" *Id.* (quoting *Matsushita,* 475 U.S. at 586). Moreover, "[t]he trial court no

longer has the duty to search the entire record to establish that it is bereft of a genuine issue of

material fact." *Id.* Rather, the nonmoving party has an affirmative duty to direct the Court's

attention to those specific portions of the record upon which it relies to create a genuine issue of

material fact.

## IV.

**A.      Discrimination Claims under the ADA and Ohio Revised Code § 4112.02[2]**

The ADA states:

> No covered entity shall discriminate against a qualified individual with a disability
> because of the disability of such individual in regard to job application procedures, the
> hiring, advancement, or discharge of employees, employee compensation, job training,
> and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (2008). The ADA defines "a qualified individual with a disability" as "an

individual with a disability who, with or without reasonable accommodation, can perform the

---

[2] The Court's analysis of Plaintiff's ADA claim applies to Plaintiff's claim under Ohio Revised
Code § 4112.02. *See Martin v. Licking County Common Pleas Court Juvenile Div.*, 2005 U.S.
Dist. LEXIS 9013 (S.D. Ohio Apr. 22, 2005) ("[B]ecause the essential elements of claims under
Ohio law and the ADA are the same, this Court will examine Plaintiff's state and federal claims
together.")

essential functions of the employment position that such individual holds or desires." 42 U.S.C.

§ 12111(8).

Unlawful discrimination includes:

> Not making reasonable accommodations to the known physical or mental limitations of
> an otherwise qualified individual with a disability who is an applicant or employee,
> unless such covered entity can demonstrate that the accommodation would impose an
> undue hardship on the operation of the business of such covered entity.

42 U.S.C. § 12112 (b)(5)(A).

The United States Court of Appeals for the Sixth Circuit has established a multi-factor

test to determine whether a plaintiff has made the required showing of discrimination under

§ 12112:

> To establish a prima facie case of disability discrimination under the ADA for failure to
> accommodate, without direct evidence that the employer relied on the plaintiff's
> disability in making an adverse employment decision, a plaintiff must show that: 1) she is
> disabled within the meaning of the Act; (2) she is a "qualified individual with a
> disability," meaning she is capable of performing all essential functions of her position
> with or without accommodation; (3) her employer was aware of her disability; (4) an
> accommodation was needed, i.e., a causal relationship existed between the disability and
> the request for accommodation; and (5) the employer denied her reasonable
> accommodation. *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004).

*Benaugh v. Ohio Civ. Rights Comm'n*, 2008 U.S. App. LEXIS 10985 (6th Cir. Ohio 2008). [3]

Once this showing is made, "the burden shifts to the employer to demonstrate that the

employee cannot reasonably be accommodated, because the accommodation would impose an

undue hardship on the operation of its programs." *DiCarlo*, 358 F.3d at 419 (internal quotation

marks omitted). If the defendant satisfies this burden of production, the plaintiff must introduce

evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff

---

[3] Although *Benaugh* and *DiCarlo* analyze claims under the Rehabilitation Act of 1973, the Sixth
Circuit has held that analysis of claims brought under the ADA parallel those brought under the
Rehabilitation Act. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

retains the ultimate burden of persuasion at all times. *Monette*, 90 F.3d at 1186-87 (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)).

It is undisputed that Plaintiff was otherwise qualified for her nursing position. The parties disagree as to whether Plaintiff was disabled, whether Defendants knew or had reason to know of Plaintiff's disability, whether Plaintiff requested an accommodation, and whether Defendants failed to provide that accommodation.

An employee is considered to be disabled if: 1) she has a physical or mental impairment that substantially limits one or more major life activities; 2) there is a record of such impairment; or 3) she is regarded as having such an impairment. 42 U.S.C. § 12102(2). *See also Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876 (6th Cir. 1996). "Major life activities" means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i) (2008).

Plaintiff alleges that she is disabled due to severe osteoarthritis in her knees and latent lyme disease, and that both conditions substantially limit her in the major life activity of walking. (Compl. ¶ 10.) She asserts that her condition was well known to her employer. (*Id.*) Defendants contend that Plaintiff is not disabled because moderate pain while walking does not constitute a disability.

The Court does not need to determine whether Plaintiff is disabled within the meaning of the statute because the Court finds there is a genuine issue of material fact as to whether Defendants regarded Plaintiff as disabled. Defendants deny any knowledge of Plaintiff's disability at the time the decision to transfer Plaintiff was made, and contend that Plaintiff did not provide them with any medical record of an impairment or disability during her employment. (Pl.'s Mot. at 12-13.) There is evidence in the record, however, suggesting that Defendants were

7

aware of Plaintiff's physical limitations. Plaintiff's supervisor in the Breast and Cervical Cancer Project wrote a memorandum to Wakefield and Angel on April 14, 2005, expressing her concerns about transferring Plaintiff. The memorandum stated, in part, that Bunch was concerned about the Plaintiff's "ability to perform in her new position as Nurse of the Day… she is not physically able to stand on her feet for the amount of time required as Nurse of the Day. [Plaintiff's] physical limitations were the driving force behind her desire to change positions." (Bunch Dep. Ex. 8.) Plaintiff's doctor also approved a handicapped parking placard from the Ohio Bureau of Motor Vehicles in February 2004, well before Defendants' decision to transfer Plaintiff, and Plaintiff had conversations with Angel about her need for a handicapped space on several occasions.

The parties dispute whether Plaintiff requested an accommodation, and whether Defendants denied Plaintiff an accommodation. Plaintiff asserts that Defendants' decision to transfer her from the Nurse of the Day Program to the Breast and Cervical Cancer Project was an accommodation for Plaintiff's difficulty walking and standing, and that Defendants revoked that accommodation when they decided to transfer Plaintiff back to the Nurse of the Day Program in April 2005. Defendants deny that transferring Plaintiff to the Breast and Cervical Cancer Program in 2003 was an accommodation.

Plaintiff has established that there are material issues of fact in dispute as to whether Plaintiff was regarded as disabled, whether Defendants knew or had reason to know of her disability, whether Plaintiff requested an accommodation, and whether Defendants denied that request. Accordingly, Defendants' motion for summary judgment on Plaintiff's discrimination claim, alleging violations of the ADA and Ohio Rev. Code § 4112.02, is not well-taken.

8

Defendants have also moved to dismiss Plaintiff's claims under Ohio Rev. Code § 4112 against Defendants Angel and Wakefield on the grounds that supervisory personnel cannot be individually liable for discriminatory acts. The Supreme Court of Ohio has expressly held that the definition of "employer" in Ohio Rev. Code § 4112.01(A)(2) includes individual supervisors and managers whose conduct violates the provisions of Ohio Rev. Code § 4112. *See Genaro v. Cent. Transp. Inc.*, 84 Ohio St. 3d 293, 296 (Ohio 1999). Defendants' motion to dismiss Defendants Wakefield and Angel is therefore denied.

## B.     Intentional Infliction of Emotional Distress

The Ohio Supreme Court defined the tort of intentional infliction of emotional distress as "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 6 Ohio St. 3d 369, 374, 453, 453 N.E.2d 666, 671 (Ohio 1983).

> The Court has further explained:
>
> By the term 'serious,' we of course go beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is both *severe and debilitating*. Thus serious emotional distress may be found where a reasonable person, normally constituted, would be unable to adequately cope with the mental distress engendered by the circumstances of the case. A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia.

*Paugh v. Hanks*, 6 Ohio St. 3d 72, 78, 451 N.E.2d 759 (Ohio 1983).

Four prima facie elements establish a viable claim for intentional infliction of emotional distress:

> (1) the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in severe emotional distress;

9

(2) the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that is can be considered as utterly intolerable in a civilized community;

(3) the actor's actions were the proximate cause of the plaintiff's psychic injury; and

(4) the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure.

*Pyle v. Pyle*, 11 Ohio App. 3d 31, 34, 463 N.E.2d 98, 103 (Ohio App. 1983).

The Court finds that Plaintiff has not raised a genuine issue of material fact concerning whether she suffered serious and debilitating emotional distress at the hands of Defendants. Plaintiff has not has not alleged or exhibited the severe symptoms outlined in *Paugh* that could amount to serious emotional distress. Rather, the record establishes that she is able to work part-time, and there is no evidence of lasting mental or physical injury.

Even if Plaintiffs' claims did rise to the required level of severity, Ohio courts additionally require evidence providing a "guarantee of genuineness." *Buckman-Peirson v. Brannon*, 159 Ohio App. 3d 12, 25, N.E.2d 830, 840 (Ohio App. 2004). To satisfy this burden, Ohio courts look to evidence of medical treatment or expert medical testimony. *Paugh*, 6 Ohio St. 3d at 80. In the absence of such expert testimony, a plaintiff must present some evidence in the record beyond allegations suggesting a serious and debilitating emotional injury to serve as a guarantee of genuineness in order to survive a motion for summary judgment. *Buckman-Peirson*, 159 Ohio App. 3d at 25 ("[A] plaintiff in a case for intentional infliction of emotional distress must present some evidence beyond the plaintiff's own testimony that he or she has experienced emotional distress due to the defendant's actions.")

This Court finds that Plaintiff has failed to present evidence suggesting that her injuries were serious and debilitating, or evidence guaranteeing the genuineness of her claims.

10

Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** on Plaintiff's claim for intentional infliction of emotional distress.[4]

## IV.

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. # 26) is **GRANTED in part** and **DENIED in part.**

**IT IS SO ORDERED.**

_8-21-2008_
**DATE**

_(signature)_

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[4] Because the Court finds no factual basis for Plaintiff's tort claim, it will not address Defendants' immunity argument.